# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| Kevin Lamont Neal,<br>    Petitioner, | )<br>)<br>) |
| v. | )     1:17cv278 (TSE/MSN) |
| | ) |
| Harold W. Clarke,<br>    Respondent. | )<br>) |

## MEMORANDUM OPINION

Kevin Lamont Neal, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions of abduction, robbery, carjacking, and use of a firearm in the Circuit Court for the City of Richmond. Dkt. Nos. 1, 5. Respondent filed a Motion to Dismiss and Rule 5 Answer, along with a supporting brief and exhibits. Dkt. Nos. 13-15. Petitioner was provided the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7K. Dkt. No. 16. Petitioner filed a traverse.[1] Dkt. No. 19. The Motion to Dismiss is now ripe for adjudication. For the reasons

---

[1] In his traverse, petitioner states that the Court does not have jurisdiction to consider the Rule 5 Answer and Motion to Dismiss because (1) it was not signed by respondent pursuant to Rule 11 of the Federal Rules of Civil Procedure; (2) it does not comply with Rule 5 of the Rules Governing Section 2254 Cases as stated in Thompson v. Green, 427 F.3d 263 (4th Cir. 2005); and (3) it does not comply with Rule 5(c) and (d) of the Rules Governing Section 2254 Cases.

    Petitioner's first argument fails because the Rule 5 Answer and response were electronically signed by respondent's counsel and contain all the information required by Rule 11. Plaintiff's second argument fails because Thompson requires the Attorney General of Virginia to serve petitioner with all the pleadings filed with the court, which was done here. Thompson, 427 F.3d at 265. In fact, petitioner does not argue that he did not receive the exhibits respondent filed with the Rule 5 Answer, rather, petitioner argues that respondent should have attached other exhibits to the Rule 5 Answer. Thus, the Virginia Attorney General did not violate the rule set out in Thompson. It is noted that the documents petitioner asserts should be attached to the Rule 5 Answer, his attachments to his state habeas petition, have been filed with the court. Finally, petitioner's third argument fails because the state criminal and habeas records have been filed in this court, therefore, respondent has substantially complied with Rule 5 of the Rules Governing

that follow, respondent's Motion to Dismiss will be granted, and the petition will be dismissed, with prejudice.

I.

On direct appeal, the Court of Appeals of Virginia stated the facts of the case as follows.

On the day in question, the victim

> was walking away from his vehicle [when] two gunmen, one of whom was the [petitioner], approached him while pointing their guns at him. The gunmen told the victim to "get on the truck." The men asked the victim if he had any guns or drugs and then checked his pockets, removing money from him. The gunmen also handcuffed the victim's hands behind his back. The victim stated his cell phone was attached to his waist by clip and the phone rang. He testified "[T]hey snatched my cell phone and my keys feel out [of] my hoodie jacket ... pocket."

Record No. 1958-13-2 (some alterations in original).

> The victim testified that the two gunmen wore "little ski masks" that covered the bottom of their faces. He also stated that his car keys fell to the ground and one of the gunmen retrieved the keys. The victim testified that as the man was rising back up, his mask "came down" and the victim had a "clear look" at the man's face for a "couple" of seconds. The victim estimated that he was several inches away from the man's face, and he stated it was sunny when the incident took place. The victim positively identified [petitioner] in court as the gunman whose mask had briefly lowered. Upon further questioning, he agreed that he had no question about his identification.

> Additionally, about six weeks after the incident, the victim identified [petitioner] from a photo array prepared by Detective Brian Taylor. Detective Taylor testified on cross-examination that during one of his meetings with the victim, the victim told him that the mask of the gunman fell during the robbery and he thought he could identify that suspect.

> Further, the victim provided the police with the license plate information of the green Mercedes in which one of the gunmen left the crime scene. The car was registered to the [petitioner] and, when officers searched the address located on the vehicle registration shortly after the crimes,[2] they found in a bedroom of the house

---

Section 2254 Cases.

[2] Richmond and Henrico County police officers arrived at this residence approximately 15-20 minutes after receiving a call regarding the crimes. June 2013 Trans. at 12. Detective Grazioso and Detective Sergeant Rhodenizer of the Richmond Police Department performed an

items containing [petitioner's] name, a mask, clothing matching the victim's description of the suspect's clothing, and the victim's cell phone. They also found guns in the house, and the green Mercedes was parked outside of the house.

Id. (footnote added). The day of petitioner's trial, his daughter provided trial counsel with documents which, according to trial counsel's notes, included only financial documents. Case Nos. CR13-F-1483–1485, 1487, 1489, Trial Counsel's Notes.

## II.

A petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D).

In the instant case, petitioner was convicted of abduction, robbery, carjacking, and use of a firearm in the Circuit Court for the City of Richmond on October 18, 2013. Case Nos. CR13-F-1483–1485, 1487, 1489. Petitioner filed a direct appeal in the Virginia Court of Appeals, which denied the petition for appeal on June 19, 2014, and again by a three judge panel on January 15, 2015. Record No. 1958-13-2. Petitioner then appealed to the Supreme Court of Virginia, which refused his appeal on August 20, 2015. Record No. 150281. Therefore, petitioner's convictions became final on November 18, 2015, the last date he could have petitioned the Supreme Court of the United States for a writ of certiorari.[3] On November 17, 2016,

---

initial sweep of the residence when they first arrived. Id. Sometime thereafter, Richmond Police Department Detective Taylor arrived at the residence and was told that they found marijuana in petitioner's daughter's purse and in a bag in plain view. Id. at 16-17. Detective Taylor verified this information and then applied for and obtained a search warrant. Id. at 17-25. Detective Mihaocoe served the search warrant. Id. at 25.

[3] See U.S. Sup. Ct. R. 13(1) (petitions for review are timely filed within 90 days of the

3

petitioner filed a state habeas corpus petition in the Supreme Court of Virginia which was dismissed as untimely on August 15, 2017. Record No. 161648. On February 6, 2017, at the earliest, petitioner filed the instant federal petition.[4]

In calculating the limitations period, the Court generally must exclude the time during which state collateral proceedings pursued by a petitioner were pending, 28 U.S.C. § 2244(d)(2); however, where the state collateral proceeding is not timely filed, the statute of limitations is not tolled while such proceedings are pending. Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"). Here, because petitioner's state habeas petition was deemed untimely, the limitations period ran unchecked from November 18, 2015, the date petitioner's convictions became final, until February 6, 2017, when the instant petition was filed, at which point, over fourteen months passed. Therefore, the instant petition was filed over two months beyond the one-year limit. Accordingly, the petition is untimely under § 2244(d), unless petitioner can establish that the statute of limitations does not apply or should otherwise be tolled. See Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002) (requiring notice and the opportunity to respond before a sua sponte dismissal under § 2244(d)).

---

entry of judgment by a state court of last resort); see also Lawrence v. Florida, 549 U.S. 327, 333 (2007) (reaffirming the inclusion of time for seeking review by the Supreme Court in calculating when direct review of a state criminal conviction becomes final under § 2244(d)).

[4] Petitioner did not date the original petition, however, he sent in a cover letter dated February 6, 2017 with the petition. Accordingly, this is the earliest date petitioner could have placed the petition in the prison mail system. See Houston v. Lack, 487 U.S. 266 (1988) (for federal purposes, a pleading filed by an incarcerated person is deemed filed when the prisoner delivers it to prison officials for mailing).

4

## III.

Petitioner does not argue that he is entitled to equitable tolling. Rather, in his petition and traverse, petitioner asserts that he is actually innocent of the crimes of which he was convicted.[5] In McQuiggin v. Perkins, 569 U.S. 383 (2013), the Supreme Court held that a convincing claim of actual innocence can overcome the § 2244(d) statute of limitations; however "tenable actual-innocence gateway pleas are rare" and limited to cases where, "'in light of the new evidence, no juror, acting reasonably, would have voted to find [petitioner] guilty beyond a reasonable doubt.'" McQuiggin, 569 U.S. at 386 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).

Thus, in order to overcome the statute of limitations, the evidence provided by petitioner must be new and credible. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." Schlup, 513 U.S. at 316. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory

---

[5] Petitioner also mentions the standard for overcoming a procedural default as established in Martinez v. Ryan, 566 U.S. 1. The Martinez test does not overcome the running of the statute of limitations. Cheeseman v. Clarke, 2016 WL 1706157, at *3 (E.D. Va. Apr. 26, 2016) ("The decision in Martinez fails to provide any basis for avoiding the statute of limitations set forth in 28 U.S.C. § 2244(d).") (citations omitted). Petitioner may have raised the Martinez argument because it also appears as though petitioner's claims are procedurally defaulted; however, the threshold issue of the timeliness of petitioner's claims is determinative, and thus, the procedural default arguments need not be addressed since the running of the statute of limitations is a separate issue from a procedural default. See Rule 5(b) of the Rules Governing Section 2254 Cases in the United States District Court (the answer to a § 2254 petition must "state whether any claim in the petition is barred by ... a procedural bar ... or a statute of limitations); Clark v. Clarke, 648 F. App'x 333, 339 (4th Cir. 2016) ("[T]he Supreme Court has recognized that actual innocence serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar or expiration of the statute of limitations.") (citations omitted).

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Id. at 324. "'Late-offered' testimony is not 'new evidence' if the substance of such testimony was available at [petitioner's] criminal trial." Lewis v. Clarke, 2014 WL 2090563, at *6 (E.D. Va. May 19, 2014) (citing Hubbard v. Pinchak, 378 F.3d 333, 340–41 (3d Cir.2004)).

### A. Amended Petition

Petitioner asserts a variety of bases for his actual innocence in his amended petition. For the reasons stated below, all of petitioner's arguments fail.

#### i. Evidence Regarding Knit Hat

In his amended petition, petitioner argues that he is actually innocent because Detective Grazioso committed perjury during the trial. Amend. Pet. 62-63. Specifically, Detective Grazioso testified that he recovered a black knit cap with the top cut off from a backpack in petitioner's residence. Id. However, the Request for Laboratory Examination ("RLE") forms submitted to have evidence collected in petitioner's case tested establish that Detective Grazioso actually recovered a black knit cap with the top cut off from the victim's vehicle. Id. In addition, petitioner claims that trial counsel did not ask for copies of the RLE forms and they were not disclosed by the prosecution, thus he was unable to impeach Detective Grazioso.

The assertion that a knit cap with the top cut out was found in the victim's vehicle does not provide credible, new evidence because it does not preclude the fact that a black knit cap with the top cut out was also found at petitioner's residence, particularly since the victim testified that both of his attackers wore masks. In addition, the RLE forms were available during petitioner's trial. Thus, this evidence is not new, and it does not establish that no juror, acting reasonably, would have voted to find petitioner guilty beyond a reasonable doubt.

### ii. Evidence Regarding Handcuffs

Petitioner next argues that he is actually innocent because Detective Mihalcoe committed perjury on the "search inventory and return when he listed that 'handcuffs' used on the victim were recovered from petitioner's residence," because the handcuffs were found on the victim, who was never at petitioner's residence. Amend. Pet. 64. Because this evidence was available to be presented at trial, it is not new evidence.

### iii. Photographic Line-Up Identification

Petitioner argues that he is actually innocent because the victim identified another person as his attacker during a photographic line-up. Amend. Pet. 65. Specifically, petitioner claims that Detective Taylor testified that the victim identified the fourth photograph as his attacker, but that his photograph was marked as number seven. Id. Petitioner asserts that this evidence could have been used to impeach the victim's identification. Id. 65-66.

The lineup photographs in the state trial record indicate that the victim in fact identified petitioner as his attacker. Case Nos. CR13-F-1483–1485, 1487, 1489, Photograph Marked 7881-4. Specifically, the photograph marked by the victim as his attacker is the same photograph that petitioner identifies in his traverse as being marked number seven, which petitioner admits is a photograph of him. Traverse, Photograph Marked 7699-7. Thus, the record contradicts petitioner's argument. In addition, the photograph marked by the victim as his attacker was admitted into evidence during the trial. Case Nos. CR13-F-1483–1485, 1487, 1489, Trial Trans. at 142-43. Thus, this is not new evidence.

Petitioner also asserts that the photographic line-up was done in violation of the police department's policies which require that the person administering the line-up not know the identification of the suspect. First, the Richmond City Police Department General Order

regarding eyewitness identification procedures attached to petitioner's traverse states that it the blind sequential method is preferred, but it is not required that the person administering the photographic line-up not know who the suspect is. Traverse, Richmond Police Department General Order, Chapter 7, Number 8(IV)(3)(b)(1)("In order to ensure that inadvertent verbal cues or body language do not impact on a witness, whenever practical and in consideration of personnel and staffing conditions within the Department, the person conducting the photographic line-up should be someone who does not know which member of the lineup is the 'true' suspect."). Thus, petitioner's allegation is contradicted by his exhibits. Second, Detective Taylor, at trial, testified that when he showed the victim the photo line-up, Detective Taylor knew that petitioner was the suspect. Case Nos. CR13-F-1483–1485, 1487, 1489, Trial Trans. at 140-43. Because this evidence was presented at trial, it is not new evidence as required to establish actual innocence.

### iv. Evidence Regarding the Victim's Cell Phone

Petitioner argues that he is actually innocent because the victim's cell phone was not found in his house and it was never admitted as evidence, therefore there is no evidence of record that victim's cell phone was recovered from petitioner's residence. Amend. Pet. 67-68. This argument is contradicted by the state court record which establishes that there was testimony that the victim's phone was found at petitioner's residence. Case Nos. CR13-F-1483–1485, 1487, 1489, Trial Trans. at 128-29, 139-40. In addition, because petitioner's argument is based on evidence presented at trial, it is not based on new evidence.

### v. Alibi Evidence

Petitioner argues that he is actually innocent because he was making a purchase at a store several miles away from the crime scene at the time of the offense. Amend. Pet. 68.

Petitioner told trial counsel that there was a receipt that would corroborate his alibi and that surveillance video would establish that he was wearing clothing unlike the clothing the victim described that his attackers were wearing. Id. However, petitioner claims the commonwealth changed the time of offense after learning of petitioner's alibi evidence. Id. 69.

First, there is no evidence in the state trial record that the Commonwealth "changed" the time of the offense. Second, petitioner has not been able to produce the receipt establishing his alleged alibi. Petitioner argues that his daughter gave a copy of the receipt to his trial counsel, however, the paperwork from trial counsel shows that petitioner's daughter only gave trial counsel financial information and that petitioner's daughter confirmed that she only gave ____ by her signature. Case Nos. CR13-F-1483–1485, 1487, 1489, Trial Counsel's Notes. Finally, petitioner knew of his alleged alibi evidence at the time of trial, thus he has not presented new evidence. Lewis, 2014 WL 2090563 at *6.

**B. Traverse**

In his traverse, petitioner states that the instant petition should be deemed timely because the Supreme Court of Virginia's decision that his state habeas petition was untimely was contrary to federal[6] and state law.[7] Traverse 8-18. These arguments are inapposite because

---

[6] It is unclear whether petitioner is arguing that the Fourth Circuit's caselaw and the Federal Rules of Civil Procedure are binding on the Supreme Court of Virginia. To the extent petitioner is making this argument, he is informed that the Supreme Court of Virginia is not bound by either Fourth Circuit caselaw or the Federal Rules of Civil Procedure.

[7] Although the traverse is sometimes difficult to follow, it appears as though petitioner is arguing that (1) the state habeas court's decision to not consider the traverse he filed in his state habeas petition was contrary to federal and state law; (2) the Department of Forensic Science and the Richmond Police Department are colluding to hold back information that petitioner has requested, and thus, the statute of limitations was not properly tolled by the Supreme Court of Virginia as to his Brady and perjury claims; and (3) his claim regarding not being able to choose his own counsel "constitutes a structural error and deprives this court of jurisdiction under the 'automatic reversal' clause."

the "contrary to federal law" standard is inapplicable to determining the timeliness of a federal habeas petition. In addition, "a challenge to Virginia's state habeas corpus proceedings cannot provide a basis for federal habeas relief." Lebedun v. Baskerville, 2001 WL 34803138, at *4 (E.D. Va. July 10, 2001). Thus, petitioner's arguments regarding the state habeas court's decision that his state habeas petition was untimely have no bearing on determining whether the statute of limits does not apply because petitioner is actually innocent.[8]

Petitioner also reasserts certain arguments as to why he is actually innocent in his traverse. Those arguments have already been addressed above. Finally, petitioner goes on to make the following new arguments regarding his actual innocence.[9]

First, petitioner argues that the search warrant obtained to search his residence was void for want of jurisdiction because it was requested by a City of Richmond police officer and signed by a City of Richmond magistrate judge, even though the property to be searched was in Henrico County. Traverse 22-24. Second, petitioner asserts that the search warrant was not initially signed by Detective Taylor, and therefore, he and the magistrate judge colluded to "manufacture" a second warrant after the search. Id. at 24-25. Third, petitioner claims that his car was seized "without judicial authorization." Id. at 26-27. Fourth, petitioner claims that Detective Taylor committed perjury in the affidavit supporting the application for a search warrant and during the suppression hearing regarding who performed the initial sweep of petitioner's residence and found marijuana in plain view. Id. at 28-30. All of the evidence forming the bases for these actual innocence arguments was known to petitioner at the time of trial, thus he has not presented new evidence.

---

[8] It also has no bearing on whether petitioner is entitled to equitable tolling.
[9] The remaining arguments in the traverse go to the merits, rather than the timeliness, of the instant petition, and therefore, need not be addressed.

10

Because petitioner has not established that he is entitled to equitable tolling or that he can overcome the statute of limitations by showing actual innocence, the petition must be dismissed as untimely.

## IV.

Petitioner has filed two motions for leave to expand the record. Dkt. Nos. 21, 26. It is settled that "review under § 2254(d)(1) is limited to the record that was before the state court ...." Cullen v. Pinholster, 563 U.S. 170, 181 (2011). In his first motion, petitioner attached a copy of his indictment, which is already a part of the record. He also attached a letter from the Virginia Department of Forensic Science, Certificates of Analysis, printouts from the Richmond General District Court regarding criminal charges filed against the victim, an article about the victim, and documents regarding the 911 call from the victim's sister. Because all the attachments except for petitioner's indictment were not considered by the state courts, his request to add them to the federal record must be denied.

In his second motion, petitioner seeks to add information to the record regarding the circumstances surrounding his filing of a Motion for a New Trial and/or Reconsideration in the state trial court. Again, because this information was not considered by the state courts, his request must be denied.[10]

## V.

The instant petition is untimely and petitioner has not established that he is entitled to equitable tolling or that he can overcome the statute of limitations by showing actual innocence. Accordingly, the petition is time barred and will be dismissed, with prejudice, by an Order to be

---

[10] In addition, this information does not change the analysis above because the statute of limitations was tolled while petitioner's Motion for a New Trial and/or Reconsideration was being considered by the trial court.

issued with this Memorandum Opinion. Finally, petitioner's Motions to Expand the Record must be denied.

Entered this 2nd day of January, 2019.

Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge